UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AL HAQQ, LLC,

                                          **Plaintiff,**

   vs.                                               1:25-cv-00644 (MAD/PJE)

THE CITY OF SCHENECTADY; and
MAXINE BARASCH, ESQ., *in her official capacity as Corporation Counsel for the City of Schenectady*,

                                          **Defendants.**

---

**APPEARANCES:**                                 **OF COUNSEL:**

**THE SGAMBETTERA LAW FIRM**         **MATTHEW J. SGAMBETTERA, ESQ.**
480 Broadway, Suite 316
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**GOLDBERG SEGALLA, LLP**            **JONATHAN M. BERNSTEIN, ESQ.**
8 Southwoods Boulevard, Suite 300
Albany, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    On May 20, 2025, Al Haqq, LLC ("Plaintiff"), the owner of at least fifteen residential rental properties in Schenectady, New York, brought this action against the City of Schenectady and its Corporation Counsel, Maxine Barasch, in her official capacity ("Defendants"). Dkt. No. 1. Plaintiff alleges that Defendants violated the Fifth and Fourteenth Amendments to the U.S. Constitution by "issuing thousands of pretextual building code violations[,]" which amounted to a physical taking without just compensation. *Id.* at ¶¶ 52, 60-61. On July 30, 2025, Defendants

1

filed a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 8. Within that submission, Defendants also move to vacate a notice of pendency filed with the complaint. Dkt. No. 8-10 at 7, 24-25. Plaintiff filed opposition papers on August 25, 2025, Dkt. No. 13, and Defendants filed a reply on September 2, 2025, Dkt. No. 15. Defendants' motion to dismiss the complaint and vacate the notice of pendency is now before the Court.

## II. BACKGROUND

The fifteen Schenectady properties involved in this action are located in the City's Hamilton Hill neighborhood, which is the subject of an urban renewal initiative known as the "Hamilton Hill Project." Dkt. No. 1 at ¶¶ 13, 16-17. According to the complaint, funding for the project was approved in June 2016. *Id.* at ¶ 16. Thereafter, to move forward with the project, the City allegedly claimed that it needed to acquire and demolish Plaintiff's Hamilton Hill properties. *Id.* at ¶ 18. Plaintiff and "its predecessors in title" refused numerous offers from the City to purchase the Hamilton Hill properties. *Id.* at ¶¶ 19-20.

Because Plaintiff refused to sell, the City allegedly began "an aggressive five (5) year campaign of selective prosecution against the Plaintiff, issuing thousands of building code violations . . . involving the Properties, in an effort to force the Plaintiff to relinquish title to the Properties . . . ." *Id.* at ¶ 21. Plaintiff appears to allege that it was "not possible . . . to satisfy the volume of building code violations." *Id.* Between October 2018 and February 2022, Plaintiff claims the City charged Plaintiff and its immediate predecessor in interest with more than one thousand New York Property Maintenance Code violations at the Hamilton Hill properties. *Id.* at ¶¶ 22-24, 26-28. Moreover, Plaintiff alleges that the City refused to accept proof that Plaintiff corrected the purported violations, and instead obtained monetary judgments against Plaintiff. *Id.*

2

at ¶¶ 25, 29.  According to Plaintiff, as of August 30, 2022, the City's money judgments totaled $664,500, "plus interests and costs."  *Id.* at ¶ 30.

Thereafter, Plaintiff alleges that the City "instituted an aggressive campaign of judgment collection efforts to assert control over the Properties," such as "service of numerous restraining notices, information subpoenas, deposition[] notices, and incarceration for contempt . . . ."  *Id.* at ¶ 31.  In July 2022, the City allegedly had a receiver appointed "to administer, collect, improve, lease, manage, repair, or sell the Properties[,]" as well as "utilize funds . . . to improve the Properties for the purposes of addressing life safety issues in occupied properties, bringing the Properties into code compliance, securing any vacant properties pursuant to Schenectady City Code, and making such improvements that shall be necessary for the sale of the Properties."  *Id.* at ¶¶ 32-33.  Accordingly, since December 23, 2022, the receiver "has been in complete control of the Properties for the benefit of the City."  *Id.* at ¶ 34.

During the receivership, the City allegedly received insurance proceeds, but failed to use them to "secure, improve, or repair" the properties.  *Id.* at ¶¶ 36-37.  Additionally, Plaintiff alleges that after a fire at one of the properties in October 2024, the City left the building "wide open and not secured[,]" and cut water service to the building without notice.  *Id.* at ¶¶ 39-40.  According to Plaintiff, the City "has not recovered any insurance proceeds to compensate for the damage" resulting from the 2024 fire.  *Id.* at ¶ 42.  Similarly, Plaintiff claims that after a fire at one of its other Hamilton Hill properties in 2023, the City failed to share any information with Plaintiff about any insurance claims or proceeds.  *Id.* at ¶ 41.

Furthermore, Plaintiff alleges that the City and its receiver failed to pay property taxes on the Hamilton Hill properties.  *Id.* at ¶ 44.  "[A]s a result, the City of Schenectady has initiated tax foreclosure proceedings against the Properties, which remain in the City's sole possession and

3

control." *Id.* Plaintiff alleges that on June 20, 2024, the City initiated a tax lien foreclosure proceeding in "Schenectady Supreme Court . . . ." *Id.* at ¶ 45. According to the complaint, all of Plaintiff's Hamilton Hill properties are listed as delinquent properties in that proceeding. *Id.* at ¶ 46. The City and receiver allegedly owe more than $23,416 in property taxes, "and instead of paying said taxes, the Defendants and the Receiver have allowed all of the Properties to become at risk for loss to the City of Schenectady . . . ." *Id.* at ¶ 47. Moreover, Plaintiff claims that Defendants "have not made any repairs to the Properties[,]" which are now in "unrentable condition . . . ." *Id.* at ¶ 48. Plaintiff alleges that, according to the City, "the only value the Properties have is for them to be demolished[,] and the lots sold to a new developer who can build new housing on the site in accordance with the Defendants' Hamilton Hill Project." *Id.* at ¶ 49. The City never compensated Plaintiff for its properties, according to the complaint. *Id.* at ¶ 51.

### III. DISCUSSION

A.   **Standards of Review**

   1.   *Subject Matter Jurisdiction: Rule 12(b)(1)*

As a threshold matter, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed" (citation omitted)). Federal Rule of Civil Procedure 12(b)(1) provides subject matter jurisdiction as a ground for a party's motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). A court may also raise the issue of subject matter jurisdiction *sua sponte*. *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700. "A

4

case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

### 2. Dismissal for Failure to State a Claim: Rule 12(b)(6)

If the Court is satisfied that it has subject matter jurisdiction over a case, a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference. *See id.* (quoting *Chambers*, 282 F.3d at 152-53). Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face[,]" *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

5

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *See id.* (quoting *Twombly*, 550 U.S. at 557).

**B.     *Rooker-Feldman* Doctrine**

Defendants' primary argument is that the Court lacks subject matter jurisdiction over this case because of the *Rooker-Feldman* doctrine. Dkt. No. 8-10 at 10-11. To this end, Defendants maintain that "[t]he issues involved in this action were decided by [Schenectady] City Court and cannot now be relitigated before this Court." *Id.* at 11. Plaintiff counterargues that *Rooker-Feldman* does not apply because the City Court judgments cited by Defendants did not cause the injuries alleged in the complaint. Dkt. No. 13 at 21-22.

"The *Rooker-Feldman* doctrine bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Mann v. N.Y. State Ct. of Appeals*, No. 1:21-CV-49, 2021 WL 5040236, *5 (N.D.N.Y. Oct. 29, 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Four requirements must all be met for the doctrine to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)). The Second Circuit has further emphasized "that the second requirement – that the plaintiff complains of an injury *caused by* a state-court judgment – is the core requirement from which the other *Rooker-*

*Feldman* requirements derive." *Id.* (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)).

### 1. Element One: Loss in State Court

Applying the *Rooker-Feldman* elements to the case at bar, it is clear that the Schenectady City Court issued several related opinions that were unfavorable to Plaintiff. *See* Dkt. Nos. 8-3 to 8-5. For example, on July 13, 2022, the City Court appointed the receiver (whose actions form part of the basis for Plaintiff's federal court complaint) for the real property of Ahmad Halim, Dkt. No. 8-3 at 3, Plaintiff's "immediate predecessor in interest . . . ," Dkt. No. 1 at ¶ 22. Thereafter, on December 23, 2022, the City Court extended appointment of the receiver to Plaintiff's properties. Dkt. No. 8-4 at 4-5. As stated by the City Court, the receiver was authorized to, *inter alia*, "immediately take possession of the Receivership property" and "administer, collect, improve, lease, repair or sell the Receivership Property . . . ." *Id.* at 5. Accordingly, the first *Rooker-Feldman* element—which Plaintiff does not challenge—is satisfied.

### 2. Element Two: State Court's Causation of Plaintiff's Injury

Plaintiff challenges the second *Rooker-Feldman* element, arguing that although the City Court entered monetary judgments against Plaintiff and appointed the receiver, it did not create Plaintiff's injury. Dkt. No. 13 at 22. Rather, Plaintiff maintains that "Defendants created the injury through their aggressive code violation enforcement scheme[,]" and the City Court simply ratified the injury, which does not implicate *Rooker-Feldman*. *Id.* There is some credence to this argument, as the City Court did not appoint the receiver until after the City had already cited Plaintiff numerous times. Dkt. No. 1 at ¶¶ 22-24, 26-28, 31-32. Therefore, to the extent that Plaintiff alleges injury based on the code violation citations themselves (as opposed to the City

7

Court's orders upholding findings of guilt on the code violations or any action of the court-appointed receiver), the causation element is not satisfied.

The Court reaches a different conclusion, however, for injuries attributed to the actions of the receiver.  "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005).  Thus, "[w]here a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the [U.S.] Supreme Court can hear." *Id.*  For example, in a case where voters alleged injury based on a board of elections' refusal to count certain absentee ballots, which in turn stemmed from a judgment of the New York Court of Appeals, the Second Circuit found that the *Rooker-Feldman* causation element was satisfied. *Id.* at 89 ("[T]he state-court judgment produced the Board's refusal to count the ballots, the very injury of which the voters complain").

Here, as already explained, the City Court appointed the receiver and gave him broad authority to manage the Hamilton Hill properties.  *See* Dkt. No. 8-4 at 4-5.  Although much of Plaintiff's complaint attributes its purported injury to the City's initial allegations of code violations (before the receiver was ever appointed), it also claims that the receiver's mismanagement caused the properties to become unrentable and blames the tax foreclosure proceedings on the receiver's alleged failure to pay property taxes.  *See, e.g.*, Dkt. No. 1 at ¶¶ 37-48.  Moreover, it appears that Plaintiff points to the receiver's actions to support its allegation that "[t]he City now claims that the only value the Properties have is for them to be demolished" in furtherance of the Hamilton Hill Project.  *Id.* at ¶ 49.  Although Plaintiff disagrees with the

8

receiver's actions and provides numerous factual allegations to that end, the City Court explicitly vested the receiver with authority to manage the properties without interference from Plaintiff. Dkt. No. 8-4 at 5-6 (enjoining Plaintiff and any other parties with interest in the properties from taking legal action against the receiver, "interfering or impeding in any manner or to any extent with the receiver's possession, dominion and control of the Receivership Property, or . . . . interfering or impeding in any manner . . . the discharge of the duties of the receiver[,]" except with express permission from the City Court).  Accordingly, insofar as Plaintiff alleges injuries stemming from the receiver's management of the properties, the second *Rooker-Feldman* element is satisfied.

### 3. Element Three: Review of State Court Judgment

On the third *Rooker-Feldman* element, Defendants argue that Plaintiff essentially seeks review of the City Court orders by requesting reinstatement of its title to the Hamilton Hill properties.  Dkt. No. 8-10 at 11.  According to Defendants, "that is an issue for City Court since it appointed the receiver[,] . . . denied removal of the receiver[,] and granted approval of the sale of 10 properties."  *Id.* (citing Dkt. Nos. 8-3 to 8-5).  Plaintiff counterargues that it has not invited review of the state court decision; rather, it seeks "relief from the Defendants' violations of the Plaintiff's due process rights[,]" which "do[es] not involve the state court judgment at all."  Dkt. No. 13 at 22.

The Court disagrees with Plaintiff's characterization.  Some of the relief it seeks *does* involve the state court orders, as reinstating title to the Hamilton Hill properties and enjoining Defendants from following the City Court's orders would directly contravene those orders.  In other words, functionally, Plaintiff asks this Court to review and reverse those aspects of the City Court orders.  *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (explaining that under

9

the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what *in substance* would be appellate review of the state judgment in a United States district court" (emphasis added)). Accordingly, the third *Rooker-Feldman* element is satisfied with respect to the receiver's actions, as those actions were expressly ordered by the City Court.

### 4. *Element Four: State Court Judgment Rendered Before Federal Proceedings*

As explained previously, the fourth *Rooker-Feldman* element requires that the state court judgment be rendered before commencement of the federal action. Plaintiff does not challenge the application of this element. The City Court orders that Defendants provide in support of their motions are dated July 13, 2022; December 23, 2022; and May 20, 2025. Dkt. Nos. 8-3 to 8-5. Two of these orders predate Plaintiff's federal suit, which commenced on May 20, 2025, and the third shares the same date as Plaintiff's federal complaint. *See* Dkt. No. 1. Importantly, the May 20, 2025, City Court order refuses to *remove* the receiver. Dkt. No. 8-5. The receiver was *appointed* in 2022, several years before the federal suit commenced. Dkt. Nos. 8-3 to 8-4. Accordingly, the fourth element is satisfied with respect to the receiver's conduct.

With all four elements met, *Rooker-Feldman* prevents this Court from exercising jurisdiction over Plaintiff's claims stemming from the court-appointed receiver's conduct. Therefore, the Court expresses no opinion on the merits of that portion of Plaintiff's complaint. However, the doctrine does not preclude federal court jurisdiction over claims for relief stemming from the City's conduct before the receiver's appointment: the barrage of code enforcement violation citations affecting the Hamilton Hill properties.

### C. Preclusion Doctrines

Next, Defendant argues that where *Rooker-Feldman* does not apply, the preclusion doctrines of collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) prevent this

10

Court from exercising jurisdiction over Plaintiff's claims. Dkt. No. 8-10 at 11-15. Plaintiff counterargues that neither doctrine applies because "[t]he state court did not rule on any claims or issues set forth in" the complaint. Dkt. No. 13 at 23. Rather, according to Plaintiff, the City Court orders should simply be considered vis-à-vis Plaintiff's "independent" constitutional claim. *Id.*

### 1. Res Judicata

"[T]he doctrine of *res judicata*, or claim preclusion, . . . provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Hunt v. Shapiro, DiCaro & Barak, LLC*, No. 5:20-CV-330, 2020 WL 3642245, *4 (N.D.N.Y. July 6, 2020) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284-85 (2d Cir. 2000)). As is relevant here, "[t]he preclusive effect of a New York judgment in a subsequent federal action is determined by New York law." *Id.* (citation omitted). Accordingly, this Court's analysis is guided by New York's "transactional approach to *res judicata*, [which] bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). In other words, "a final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof." *Id.* (quoting *Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009)). Importantly, "[t]he rule applies not only to claims litigated[,] but also to claims that could have been raised in the prior litigation." *Id.* (quoting *Shelley*, 66 A.D.3d at 993).

Here, Plaintiff's alleged injuries stemming from the initial code violation charges are subject to *res judicata*. In its complaint, Plaintiff alleges that the City's issuance of hundreds of building code violation citations amounted to a constitutional violation. *See* Dkt. No. 1 at ¶¶ 52-54, 61. However, the City Court directly addressed those violations in its order dated December 23, 2022. Dkt. No. 8-4. Therein, the City Court expressly stated that Plaintiff "was found guilty at trial on 669 counts of building code violations" and fined hundreds of thousands of dollars. *Id.* at 3. The City Court further stated that "[i]n total, the Judgment Debtors [Plaintiff and Halim] have either plead [sic] to or been convicted of 1,243 counts of violating various sections of the New York Uniform Code or Schenectady City Code with respect to certain real property[,] . . . resulting in a combined judgment total against the Judgment Debtors of $664,500.00." *Id.* Thus, according to the City Court order, Plaintiff has already had opportunities to litigate the alleged code enforcement violations. Moreover, the same parties—Plaintiff and Defendant City of Schenectady—were involved in the earlier litigation in City Court.

Nevertheless, Plaintiff now attempts to predicate a federal constitutional claim upon the same factual foundation: the code violations. Simply asserting the newer claim "based on different legal theories or seek[ing] dissimilar or additional relief" is not enough to defeat *res judicata*. *Burgos*, 14 F.3d at 790 (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185 (1981)). However, *res judicata* will not apply if "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Id.* (citations omitted). Based on Defendants' submissions, it appears that all earlier litigation regarding the code violations took place in Schenectady City Court. Importantly, city courts in New York have limited jurisdiction, including over "actions and proceedings for the recovery of money, . . . recovery of chattels[,] . . . and . . . foreclosure of liens on personal property[,]" with an amount-in-controversy limit of

12

$15,000. N.Y. Uniform City Ct. Act § 202; *see also id.* at § 203 (listing real property actions over which city courts may exercise jurisdiction). Furthermore, New York's Uniform City Court Act enumerates city courts' jurisdiction over actions to collect penalties or issue injunctions under state and local laws, *id.* §§ 203(a)(2), (a)(6), but does not mention or allude to claims arising under the federal Constitution. Likewise, in their *res judicata* argument, Defendants do not contend that the City Court had jurisdiction to adjudicate constitutional claims, such as the one presently before this Court.

Accordingly, *res judicata* is not a bar to Plaintiff's claims based on the code violations.

### 2. Collateral Estoppel

"Collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.'" *Hunt*, 2020 WL 3642245, at *5 (quoting *Burgos*, 14 F.3d at 792). "In order for collateral estoppel to apply, there must be 'an identity of issue which has been necessarily decided in the prior action and is decisive of the present action,' and 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id.* (quoting *Burgos*, 14 F.3d at 792). Importantly, "[d]etermination of whether collateral estoppel applies does not depend on whether the relief now sought was available in the [earlier proceeding]; what matters is whether there was a full opportunity to litigate identical issues." *Burgos*, 14 F.3d at 792. "If a party has not had an opportunity to appeal an adverse finding, then it has not had a full and fair opportunity to litigate that issue." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (citing *People v. Medina*, 208 A.D.2d 771, 772 (2d Dep't 1994)).

13

As already explained, the parties litigated the building code violations at trial. Based on a provided City Court decision, it is clear that Plaintiff was convicted of (or pled guilty to) hundreds of violations. Dkt. No. 8-4 at 3. Accordingly, the prior proceeding establishes that the issue of the violations' merits has already been decided. This issue is decisive in the present case because the crux of Plaintiff's claim is that the City acted pretextually by penalizing Plaintiff for numerous code violations. *See, e.g.*, Dkt. No. 1 at ¶ 52. By extension, Plaintiff argues that the City's pretextual action rises to the level of an unconstitutional taking without just compensation. *Id.* at ¶¶ 52, 60-61. It follows that if the code violation accusations were legitimate, they were not pretextual, and Plaintiff's argument fails.

Thus, the dispositive question is whether the prior actions gave Plaintiff a full and fair opportunity to contest the purportedly preclusive decision regarding the violations' legitimacy. As mentioned, a full and fair opportunity to contest includes an opportunity to appeal. Defendants argue that Plaintiff had the opportunity to appeal at least one of the adverse decisions, but failed to do so before the July 2025 appeal deadline. Dkt. No. 8-10 at 11. However, it appears that this supposed failure to appeal only relates to the May 20, 2025, decision denying removal of the receiver. Defendants make no arguments regarding appealability of the earlier City Court decisions concerning the code violations, and it is not immediately clear from the record whether Plaintiff had the chance to appeal those decisions.

Accordingly, without a clearer indication that Plaintiff had an opportunity to appeal and otherwise fully litigate the code violations, collateral estoppel does not bar this Court from considering Plaintiff's constitutional claim stemming from those violations.

**D.     Plaintiff's Constitutional Claim**

Finding no jurisdictional bar to Plaintiff's constitutional claim as it relates to the code violations, the Court now examines Plaintiff's complaint for sufficiency under Rule 12(b)(6). Plaintiff alleges that Defendants violated the Fifth and Fourteenth Amendments through a "physical taking of Plaintiff's property for public use without just compensation."[1] Dkt. No. 1 at ¶¶ 60-61. The Fifth Amendment Takings Clause prohibits the federal government from taking private property without just compensation to the property owner. *See Knick v. Twp. of Scott*, 588 U.S. 180, 189-90 (2019). Likewise, the Fourteenth Amendment "incorporates the Takings Clause against the States." *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 276 (2024). The Clause also applies against local governments. *See Knick*, 588 U.S. at 189, 194.

While there are multiple types of takings, *see Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (citation omitted), Plaintiff specifically alleges a *physical* taking of its Hamilton Hill properties by Defendants, Dkt. No. 1 at ¶ 61. "Physical takings . . . occur when the government physically takes possession of an interest in property for some public purpose." *Buffalo Tchrs. Fed'n*, 464 F.3d at 374 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002)). The government can commit a physical taking in

---

[1] The complaint also alludes to equal protection violations in its discussion of selective prosecution. *See* Dkt. No. 1 at ¶¶ 2, 21, 53. "To adequately allege a violation of the Equal Protection Clause of the Fourteenth Amendment, 'a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 280 (N.D.N.Y. 2012) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)). Accordingly, Plaintiff must show that Defendants treated it differently from another individual or entity "similarly situated in all material respects." *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Plaintiff's complaint entirely fails to meet this requirement. For example, although the complaint alleges in conclusory fashion that Defendants "fail[ed] to treat similarly situated persons alike[,]" Dkt. No. 1 at ¶ 53, the complaint does not mention any such "similarly situated persons." Indeed, Plaintiff makes no allegations regarding other Hamilton Hill property owners who refused to sell their properties to the City. Thus, to the extent an equal protection claim is asserted, it must fail.

15

different ways, such as by eminent domain or physical occupation, even without acquiring title. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-48 (2021) (collecting cases). Additionally, government actions such as a leasehold takeover or physical access to a property for equipment installation can rise to the level of a physical taking. *Buffalo Tchrs. Fed'n*, 464 F.3d at 374 (collecting cases). By contrast, *regulatory* takings occur when "[government] regulation goes too far and in essence 'effects a taking.'" *Id.* (citation omitted). Plaintiff's complaint makes no mention of a regulatory taking.

Although the City Court vested broad authority in the receiver to control the Hamilton Hill properties, including their physical maintenance and occupancy, *Rooker-Feldman* prohibits this Court from considering the constitutional propriety of the receiver's actions at this juncture. Outside of the allegations associated with the receiver's control over the property, the complaint states that the City engaged in "selective prosecution" by repeatedly citing Plaintiff and its predecessor in title for supposed code violations. Dkt. No. 1 at ¶ 21. The complaint alleges that the City took this action after Plaintiff and its predecessors refused to sell the Hamilton Hill properties to make room for the urban renewal project. *Id.* at ¶¶ 18-21. Although the complaint alleges temporal proximity between the refusal to sell and the large volume of code violation citations, it does not allege any facts showing how the code violations constituted a physical taking of the properties or otherwise analogize them to any recognized forms of physical takings.

Accordingly, Plaintiff's constitutional claim, insofar as it is based on the City's aggressive code enforcement action, fails to state a cognizable cause of action and must be dismissed on that basis. Therefore, the portion of Plaintiff's complaint that is not jurisdictionally barred by the *Rooker-Feldman* doctrine must be dismissed for failure to state a claim.

**E.     Personal Involvement of Defendant Barasch**

In addition to the aforementioned pleading deficiencies, Plaintiff's complaint must be dismissed with respect to Defendant Barasch for failure to allege personal involvement in the purported constitutional violations. Although the complaint identifies Barasch as the City's Corporation Counsel "at all times relevant to the action[,]" *id.* at ¶ 12, Plaintiff does not identify specific dates as to Barasch's professional role or connection to the complained-of conduct. Defendants counter this allegation by pointing out that Barasch assumed her role as Corporation Counsel in 2024, after most of the City's challenged actions occurred. Dkt. No. 8-10 at 21.

Regardless of this apparent temporal discrepancy, personal involvement in the alleged constitutional deprivation is a prerequisite for supervisory liability under 42 U.S.C. § 1983. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Personal involvement can be established through direct participation in the alleged violation, failure to remedy the violation after learning that it occurred, creation of a policy or custom that "foster[ed]" the violation or allowed it to continue, or "gross[] negligen[ce] in supervising subordinates who caused the violation." *Id.* (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). The complaint does not concretely allege Barasch's involvement in any of these ways; it simply identifies her as the City's Corporation Counsel and appears to assign blame based on that title. Accordingly, the complaint must also be dismissed against Defendant Barasch on this alternative ground.

**F.   Notice of Pendency**

Pursuant to New York's Civil Practice Law and Rules, "[a] notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, incumbrance of, or the possession, use or enjoyment of, real property . . . ." N.Y. C.P.L.R. § 6501(a). "The purpose of a notice of pendency is to place any subsequent purchaser of the real property on constructive notice that the property is the subject of pending litigation."

*Richard J. Zitz, Inc. v. Pereira*, 965 F. Supp. 350, 354 (E.D.N.Y. 1997); *see also Wells Fargo Bank, N.A. v. Paul*, No. 5:16-CV-0665, 2017 WL 2116529, *3 (N.D.N.Y. May 15, 2017). "On a motion to vacate [a notice of pendency], the court will look to the allegations of the complaint and the notice of pendency." *Richard J. Zitz, Inc.*, 965 F. Supp. at 355 (citing *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 321 (1984)). "The subject litigation must be one where the relief requested is 'directly related' to the title, possession, use or enjoyment of the real property." *Id.*

Although the present action concerns an alleged violation of the Constitution's Takings Clause, the notice of pendency provides that "an action has been commenced and is now pending . . . regarding a claim for specific performance of a contract involving the title to certain real property located in the City of Schenectady . . . ." Dkt. No. 1-1 at 1. It is unclear to the Court what contract is being referenced. Although the complaint requests both monetary damages and reinstatement of title to the Hamilton Hill properties, the complaint does not purport to seek specific performance of a contract. Moreover, as already discussed, the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction over the portions of Plaintiff's complaint addressing title and the actions of the City Court-appointed receiver. Thus, the Court orders vacatur of the notice of pendency.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 8) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's notice of pendency (Dkt. No. 1-1) is **VACATED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 29, 2026
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge